# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

WILLIAM CHAPMAN,
        Plaintiff,

        v.                                                    Case No. 05-C-1254

MATTHEW J. FRANK,
        Defendant.

## DECISION AND ORDER

Plaintiff, William Chapman, who currently is incarcerated at Redgranite Correctional Institution, filed this pro se civil rights action pursuant to 42 U.S.C. § 1983. By order of July 21, 2006, plaintiff was granted leave to proceed in forma pauperis on Eighth Amendment and official capacity claims. This matter comes before me on the following applications: (1) defendant's motion for summary judgment; (2) plaintiff's motion to deny defendant's motion; (3) plaintiff's request for temporary restraining order; and (4) plaintiff's request for a decision on defendant's motion.

## I. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A.      Preliminary Matters

Plaintiff has filed a motion requesting that I deny defendant's motion for summary judgment. Plaintiff's motion is essentially a response to defendant's summary judgment motion. Moreover, plaintiff has not filed a separate document purporting to respond to the claims advanced defendant by Frank in support of his request for summary judgment. Thus, plaintiff's motion is properly construed as a response to defendant's motion. Plaintiff's motion, therefore, will be terminated. However, I will consider the arguments set forth in plaintiff's filing when addressing defendant's motion for summary judgment.

## B.     Summary Judgment Standard

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." Id.  For the fact to be material, it must relate to a dispute that "might affect the outcome of the suit." Id.

Although summary judgment is a useful tool for isolating and terminating factually unsupported claims, Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986), courts should act with caution in granting summary judgment, Anderson, 477 U.S. at 255.  When the evidence presented shows a dispute over facts that might affect the outcome of the suit under governing law, summary judgment must be denied. Id. at 248.

The moving party bears the initial burden of demonstrating that he is entitled to judgment as a matter of law.  Celotex Corp., 477 U.S. at 323.  Where the moving party seeks summary judgment on the ground that there is an absence of evidence to support the nonmoving party's case, the moving party may satisfy its initial burden simply by pointing out the absence of evidence.  Id. at 325.  Once the moving party's initial burden is met, the nonmoving party must "go beyond the pleadings" and designate specific facts to support each element of the cause of action, showing a genuine issue for trial.  Id. at 323-24. Neither party may rest on mere allegations or denials in the pleadings, Anderson, 477 U.S.

2

at 248, or upon conclusory statements in affidavits, <u>Palucki v. Sears, Roebuck & Co.</u>, 879 F.2d 1568, 1572 (1989).

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). However, it is "not required to draw every conceivable inference from the record - only those inferences that are reasonable." <u>Bank Leumi Le-Israel, B.M. v. Lee</u>, 928 F.2d 232, 236 (7th Cir. 1991).

**C.    Facts**[1]

**1.    Background**

At all times relevant, plaintiff was incarcerated at Redgranite Correctional Institution (RGCI) in Redgranite, Wisconsin. (Complaint [Compl.] at 4). Defendant Matthew J. Frank is the Secretary of the Wisconsin Department of Corrections (DOC). <u>Id.</u>

On February 9, 2005, an RGCI staff clinician diagnosed plaintiff has having paruesis,[2] a medical condition"makes it extremely difficult for [plaintiff] to provide a urine sample in the 2 hour time limit" required by the RGCI urinalysis (UA) testing policy. <u>Id.</u> at 6.[3] Plaintiff's

_____

[1]Inasmuch as defendant Frank moved for summary judgment on grounds that plaintiff failed to exhaust his administrative remedies and refused to authorize release of his medical records, defendant did not include in his motion an account of the events giving rise to the complaint. Therefore, plaintiff's allegations as set forth in the complaint are included in this section. <u>See</u> <u>Ford v. Wilson</u>, 90 F.3d 245, 246 (7th Cir. 1996) (a verified complaint may be treated as an affidavit at summary judgment stage).

[2]The parties are unsure whether this complaint was filed on January 5, or February 5, 2005. However, because the complaint was received by prison officials on February 7, 2005, I will refer to it as if it were filed on February 5, 2005.

[3]Paruesis is defined as "inhibited urination, especially in the presence of others." <u>Stedman's Medical Dictionary</u> 1329 (27th ed. 2000).

medical condition causes him "physical and mental pain during these urinalysis tests." Id.
When plaintiff is unable to successfully complete a urinalysis test, defendant Frank
threatens him with prison discipline. Id. For example, plaintiff has been issued a Conduct
Report and sentenced to Disciplinary Separation as a result of his inability to timely provide
a urinalysis sample. (See Compl. Exhibits at 23).

Plaintiff concedes that defendant Frank has responded to his concerns by
implementing a modified urinalysis testing procedure. (Compl. Exhibits at 27). However,
he asserts that the modified test "is STILL a urinalysis testing procedure." Id. Plaintiff
further contends that there are alternate forms of drug testing available, including tests of
the blood, hair, sweat and saliva. (Compl. at 6).

Plaintiff is not challenging the DOC's "right to drug test him," nor is he refusing to be
drug tested. Id. Rather, plaintiff is "simply requesting an alternate form of drug test due to
his medical condition." Id. In an attempt to resolve this issue, plaintiff filed several inmate
complaints, which are described in detail below. (See Affidavit of Sally J. Wess [Wess Aff.])

**2.      Facts Relating to Inmate Complaints**

On February 5, 2005, plaintiff filed a four-page long inmate complaint ("first inamte
complaint") alleging that he received a major conduct report "for not being able to provide
a UA [urinalysis] sample in the 2 hour time limit."  (Wess Aff. Ex. 1001 at 1). Plaintiff
indicated that, prior to filing the complaint, he contacted prison medical personnel to inform
them of his medical condition but his complaints went ignored. Id. Plaintiff further stated
that when providing the UA sample, he was forced to drink so much water that it nearly
made him vomit and made his bladder feel as it if were about to burst. Id. at 2. Plaintiff
stated that he wanted to take personal responsibility for his problem and requested an

4

alternate form of drug testing.  Id. at 3-4.  Finally, plaintiff charges prison officials with negligence and harassment.  Id.  This complaint was returned to plaintiff, unfiled, because it contained more than one issue in violation of Wis. Admin. Code § DOC 310.09(1)(e). (Wess Aff. Ex. 1001 at 5).  Once advised of this deficiency, plaintiff did not refile his complaint to attempt to comply with § 310.09(1)(e).

On February 8, 2005, plaintiff filed Inmate Complaint RGCI-2005-4696, ("second inmate compliant) again requesting an alternate form of drug testing.  Plaintiff stated that prison officials refused to respond to his requests for an alternate form of drug testing. Plaintiff asked that he be taken to the Health Services Unit for future UA samples, where he could provide blood or hair instead of a urine sample.  It is undisputed that in his February 5, 2005, complaint, plaintiff stated that his requests for an alternate form of drug test were ignored and he asked to give a blood or hair sample instead.   On February 10, 2005, the Inmate Complaint Examiner (ICE) recommended that the complaint be dismissed because plaintiff could not dictate how he would provide his drug test specimen. The reviewer accepted the ICE's recommendation and dismissed plaintiff's complaint.   Plaintiff subsequently appealed to the Corrections Complaint Examiner (CCE), who stated that plaintiff could not be excluded from the standard protocol without evidence of his medical condition and recommended that the complaint be dismissed.  (Wess Aff. Ex. 1001 at 10-12).  The Secretary affirmed the decision of the CCE.  (Wess Aff. Ex. 1001 at 13).

On November 9, 2005, plaintiff filed another complaint asking that he be permitted to provide blood or hair instead of urine for future drug tests.  ("third inmate complaint"). Plaintiff indicated that he filed a civil action in Dane County Circuit Court regarding this issue. Id.  He also stated that, while prison officials had adopted a modified urinalysis testing

5

procedure, the modified procedure was still a urinalysis test.  Id.  Plaintiff claimed that such

test caused him physical and mental pain and he requested that psychological services have

no further contact with him.  Id.  Finally, plaintiff stated that he attempted to exhaust his

administrative remedies, even though he knew that his complaint would be rejected, and he

intended to file a lawsuit.  Id. at 2. this complaint was returned, unfiled, to plaintiff on

November 11, 2005, for containing more than one issue in violation of § 310.09(1)(e).  When

plaintiff attempted to appeal the unfiled complaint, he was again informed that the complaint

was defective for containing more than one issue. the complaint examiner denied plaintiff's

attempt to appeal this letter because the complaint was never filed and no complaint number

was listed on the form.  On that date, the complaint examiner advised plaintiff that if he

cured the deficiencies in his original complaint, he could refile it at the institution level and

then appeal any adverse decision to the appropriate authorities.  Id.

### 3.    Facts Relating to Medical Records

Plaintiff filed this action on December 5, 2005, alleging that defendant Frank violated

his rights under the Eighth Amendment.  (Compl. at 6).  On August 2, 2006, Corey F.

Finkelmeyer, counsel for defendant Frank, sent plaintiff an Authorization and Informed

Consent for Use and Disclosure of Medical Information.  (Affidavit of Corey F. Finkelmeyer

[Finkelmeyer Aff.] Ex. 1003).  Plaintiff responded on August 17, 2006, stating that he would

not authorize defendant to have access to any other information from his medical file other

than that which was submitted with his complaint.  (Finkelmeyer Aff. ¶ 5).

On August 8, 2006, counsel for defendant Frank sent plaintiff a second Authorization

and Informed Consent for Use and Disclosure of Medical Information.  (Finkelmeyer Aff. Ex.

6

1005).  Plaintiff responded on August 14, 2006, stating that he would not give defendant

Frank full access to his medical records.  (Finkelmeyer Aff. Ex. 1006).

## E.    Analysis

Defendant Frank asserts that he is entitled to summary judgment on the following

grounds: (1) plaintiff failed to exhaust his administrative remedies; and (2) plaintiff has

refused to authorize the release of his medical records.

### 1.    Exhaustion of Administrative Remedies

The Prison Litigation Reform Act of 1995 (PLRA), Pub.L. 104-134, 110 Stat. 1321

(1996), provides in pertinent part that,

> [n]o action shall be brought with respect to prison conditions under section
> 1983 of this title, or any other Federal law, by a prisoner confined in any jail,
> prison, or other correctional facility until such administrative remedies as are
> available are exhausted.

42 U.S.C. § 1997e(a).  Exhaustion of administrative remedies is a condition precedent to

suit.  Dixon v. Page, 291 F.3d 485, 488 (7th Cir. 2002) (citing Perez v. Wis. Dep't of Corrs.,

182 F.3d 532, 535 (7th Cir. 1999)).  Failure to exhaust is not jurisdictional.  Greene v.

Meese, 875 F.2d 639, 643 (7th Cir. 1989).  Rather, it is an affirmative defense that

defendant has the burden of pleading and proving.  Jones v. Bock, 127 S. Ct. 910, 919

(2007); Massey v. Helman, 196 F.3d 727, 735 (7th Cir. 1999). The PLRA exhaustion

requirement requires "proper exhaustion," meaning that a prisoner must complete the

administrative review process in accordance with the applicable procedural rules.  See

Woodford v. Ngo, 126 S. Ct. 2378, 2382 (2006) (holding that prisoner does not satisfy

exhaustion requirement by filing untimely or otherwise procedurally defective administrative

grievances or appeals).  In Wisconsin, inmate complaints must "[c]ontain only one issue,

and shall clearly identify the issue." Wis. Admin. Code § DOC 310.09(1)(e). Prison officials are required to return, and not process, inmate complaints that contain more than one issue. Wis. Admin. Code § DOC 310.09(3).

Prison officials returned plaintiffs first and third inmate complaints to him unfiled because each contained more than one issue in violation of § DOC 310.09(3). Because the PLRA requires plaintiff to comply with the administrative review process in accordance with prison regulations, and plaintiff did not do so, he has not exhausted his administrative remedies with respect to these complaints. Plaintiff's contention that he exhausted his third inmate complaint because he filed it on the correct form and then appealed to the warden and the CCE is misplaced because the complaint was returned unfiled pursuant to § DOC 310.09(3). See Cannon v. Washington, 418 F.3d 714 (7th Cir. 2005) (holding that inmate complaint not exhausted where first complaint was defective and inmate failed to follow prison officials' instructions as to how to resubmit the complaint and cure the deficiency). Furthermore, the instant case does not present a situation which exempts plaintiff from completing the grievance process for his third inmate complaint because he received the relief requested. See Perez, 182 F.3d at 537 (holding where the harm is done and no further administrative action could supply any remedy, prisoner might be excused from § 1997e(a) exhaustion requirement).

Defendant concedes that plaintiff exhausted his second inmate complaint. However, defendant contends that plaintiff's compliant challenged only the first urinalysis procedure and did not address RGCI's modified urinalysis procedure and, therefore, he may not proceed on such claim. In response, plaintiff avers that he has exhausted his urinalysis claim because both the original and the modified urinalysis procedures require him to

8

provide a urine sample. In plaintiff's second inmate complaint, he stated that his requests

for an alternate form of drug test were ignored and he asked to give a blood or hair sample

instead.   Thus, I turn to whether this inmate complaint exhausts plaintiff's urinalysis claim

as presented in his § 1983 complaint.

The purpose of the exhaustion requirement is to alert prison officials to a challenged

condition and invite state action.  Riccardo v. Rausch, 375 F.3d 521, 524 (7th Cir. 2004).

When a state has not adopted any rule governing the level of detail required of prisoners'

grievances, "a grievance suffices if it alerts the prison to the nature of the wrong for which

redress is sought." Id.

In this case, plaintiff is proceeding on a claim that RGCI's urinalysis procedures

violated his rights under the Eighth Amendment.  Plaintiff filed an inmate complaint objecting

to RGGI's use of urinalysis tests.  Defendant claims that the original and modified urinalysis

procedures are distinguishable and, therefore, plaintiff exhausted only his original urinalysis

procedure claim.  However, plaintiff's complaint makes clear that any sort of uninalysis

testing causes him mental and physical pain, and he requests an alternate form drug testing,

such as blood.  Moreover, without more information about the urinalysis procedures, I

cannot conclude that defendant was not alerted to plaintiff's urinalysis claim as set forth in

his civil rights complaint.  See Riccardo, 375 F.3d at 524. Thus, I will deny defendant's

motion for summary judgment as to plaintiff's second inmate complaint.

### 2.    Medical Records

Defendant Frank contends that, even if plaintiff's urinalysis claim is exhausted, this

action should be dismissed because plaintiff refused to authorize release of his medical

9

records. Plaintiff claims that he has provided defendant with the necessary medical information.

Under the Federal Rules of Evidence, parties are permitted to obtain discovery "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action[.]" Fed.R.Civ.P. 26(b)(1). Relevance is construed broadly, Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 n. 12 (1978), to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Hickman v. Taylor, 329 U.S. 495, 501 (1947). Thus, discovery is not limited to the issues raised by the pleadings or the merits of a case. Sanders, 437 U.S. at 351.

Although it is unclear, plaintiff may have refused to release his medical records due his constitutional interest in protecting such records. See Whalen v. Roe, 429 U.S. 589 (1977). However, he waived this interest when he filed suit alleging that defendant was deliberately indifferent to his medical condition. See, e.g., Doe v. Marsh, 918 F. Supp. 580, 585 (N.D.N.Y. 1996); Ferrell v. Glen-Gery Brick, 678 F. Supp. 111, 112 (E.D.Pa. 1987)("both courts and commentators alike have consistently taken the view that when a party places his or her physical or mental condition in issue, the privacy right is waived."); Felder v. Wyman, 139 F.R.D. 85, 88 (D.S.C. 1991) (where plaintiff filed lawsuit challenging the decedent's quality of medical care, any privilege with respect to decedent's medical condition was waived).

In the present case, plaintiff contends that he suffers from paruesis, a medical condition that makes it difficult for him to provide a urine sample for drug testing within the two hour time limit. Plaintiff further avers that, while defendant has modified the urinalysis test, it still requires plaintiff to provide a urine sample, thereby exposing him to physical and

10

mental pain.  Therefore, plaintiff's medical records are relevant to the subject matter in the pending action and are discoverable.

According to plaintiff, he has provided defendants with sufficient medical records to show that he has a serious medical need.  Specifically, plaintiff has submitted with his complaint a document showing that he was diagnosed with paruesis.  However, as discussed, defendant Frank is entitled to review material that reasonably bears on any issue in this case.  See Hickman, 329 U.S. at 501.

Plaintiff may also refused to authorize the release of his medical records because he believes that such information is privileged and therefore shielded from discovery under Fed.R.Civ.P. 26(b)(1).  However, there is no federal common law physician-patient privilege. Northwestern Memorial Hospital v. Ashcroft, 362 F.3d 923, 926 (7th Cir. 2004).  Moreover, were Wisconsin law to apply, plaintiff's medical records would still be discoverable under Wis. Stat. § 905.04(4)(c).

Inasmuch as it may not have been clear to plaintiff that his failure to disclose his medical records could lead to dismissal of this action, I will provide him with one more brief opportunity to release his medical information to defendant.  Plaintiff remains free to request a protective order limiting the persons who may view his medical records and the manner in which the records may be used.  If, by **September 9, 2007**, plaintiff has not executed a release, he will be barred from using information from his medical records at trial or on summary judgment.

11

## II. PLAINTIFF'S REQUEST FOR TEMPORARY RESTRAINING ORDER

Plaintiff has asked me to issue an order preventing the Wisconsin Department of Corrections from subjecting him to future urinalysis tests. When considering whether to grant a temporary restraining order, the court must first consider "whether the moving party has demonstrated: (1) a reasonable likelihood of success on the merits; and (2) no adequate remedy at law and irreparable harm if preliminary relief is denied." Aircraft Owners & Pilots Ass'n v. Hinson, 102 F.3d 1421, 1424-25 (7th Cir. 1996) (internal citations omitted). If the moving party has demonstrated those items to the satisfaction of the court, then it must look at: (3) the irreparable harm the non-moving party will suffer if the injunction is granted balanced against the irreparable harm the moving party will suffer if the injunction is denied; and (4) the public interest, i.e., the effect that granting or denying the injunction will have on non-parties. Id. The Seventh Circuit has adopted a sliding scale approach where the greater the movant's chances of success on the merits, the less he must show that the balance of hardships tips in his favor. Ty, Inc. v. Jones Group, 237 F.3d 891, 895-96 (7th Cir. 2001).

Plaintiff argues that he is entitled to injunctive relief because, as a state prisoner, he is randomly drug tested using RGCI's urinalysis procedure. Plaintiff claims that each time he is selected to be drug tested, he suffers physical pain and mental anguish. In response, defendants maintain that RGCI has adopted a new urinalysis procedure for inmates who suffer from paruesis and plaintiff has failed to avail himself of this alternative.

At this stage of the proceedings, plaintiff has not demonstrated that he lacks an adequate remedy at law because he requested similar relief in the complaint. Additionally, I am unpersuaded that plaintiff has satisfied the irreparable harm requirement because he

12

has not responded to defendant's contention that he is permitted to submit to an alternative form of drug testing.  Therefore, plaintiff's request for temporary restraining order will be denied without prejudice.

### III. PLAINTIFF'S REQUEST FOR A DECISION IN THIS CASE

By letter of April 12, 2007, plaintiff requests that the court issue a decision on defendant's motion for summary judgment.  As discussed above, defendant's motion for summary judgment will be granted in part and denied in part.  Thus, I will deny plaintiff's motion for a decision on defendant's motion as moot.

### IV. CONCLUSION

**IT IS ORDERED** that defendants' motion for summary judgment (Doc. # 23) is **GRANTED IN PART AND DENIED IN PART.**

**IT IS ORDERED** that plaintiff's motion for order (Doc. # 33) is **TERMINATED.**

**IT IS FURTHER ORDERED** that plaintiff may have until **September 9, 2007**, in which to execute a release of his medical records.  If, by **September 9, 2007,** plaintiff has not executed a release, he will be barred from using information from his medical records at trial or on summary judgment and may be subject to further sanctions.

**IT IS ORDERED** that plaintiff's request for temporary restraining order (Doc. # 39) is **DENIED WITHOUT PREJUDICE.**

**IT IS ORDERED** that plaintiff's request for a decision in this case (Doc. # 45) is **DENIED AS MOOT.**

13

Dated at Milwaukee, Wisconsin, this 1 day of August, 2007

/s_____
LYNN ADELMAN
District Judge

14