# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**WILLIAM B. CHAPMAN,**

    **Plaintiff,**

  v.                                      Case No. 05-C-1254

**RICK RAEMISCH,**

    **Defendant.**

## ORDER

Plaintiff, William B. Chapman, filed this pro se civil rights action under 42 U.S.C. § 1983. In an order dated July 21, 2006, I allowed plaintiff to proceed in forma pauperis on an official capacity claim against the Secretary of the Wisconsin Department of Corrections (DOC) for a violation of his Eighth Amendment rights. Specifically, plaintiff, who has been diagnosed with paruesis, contends that any DOC policy that requires him to provide a urine sample constitutes deliberate indifference to his serious medical condition. Before me now are defendant's motion for summary judgment, plaintiff's motion opposing defendant's motion for summary judgment, and plaintiff's request that his medical records be kept confidential.

## I. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A. Preliminary Matters

Plaintiff filed a motion opposing defendant's motion for summary judgment. Plaintiff's motion was filed without proposed findings of fact or any supporting affidavits and, consequently, is not a proper motion for summary judgment. Moreover, plaintiff has not filed a separate document purporting to respond to the claims advanced by defendant in support

of his motion for summary judgment. Thus, I will construe plaintiff's motion as a response to defendant's motion and I will consider the arguments set forth in plaintiff's filing when addressing defendant's motion for summary judgment. Plaintiff's motion will be terminated.

**B.     Summary Judgment Standard**

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (emphasis deleted). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." Id. For the fact to be material, it must relate to a disputed matter that "might affect the outcome of the suit." Id.

Although summary judgment is a useful tool for isolating and terminating factually unsupported claims, Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986), courts should act with caution in granting summary judgment, Anderson, 477 U.S. at 255. When the evidence presented shows a dispute over facts that might affect the outcome of the suit under governing law, summary judgment must be denied. Id. at 248.

The moving party bears the initial burden of demonstrating that he is entitled to judgment as a matter of law. Celotex Corp., 477 U.S. at 323. Where the moving party seeks summary judgment on the ground that there is an absence of evidence to support the non-moving party's case, the moving party may satisfy his initial burden simply by pointing out the absence of evidence. Id. at 325. Once the moving party's initial burden is met, the

2

nonmoving party must "go beyond the pleadings" and designate specific facts to support each element of the cause of action, showing a genuine issue for trial. Id. at 322-23. Neither party may rest on mere allegations or denials in the pleadings, Anderson, 477 U.S. at 248, or upon conclusory statements in affidavits, Palucki v. Sears, Roebuck & Co., 879 F.2d 1568, 1572 (7th Cir. 1989).

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, it is "not required to draw every conceivable inference from the record — only those inferences that are reasonable." Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir. 1991).

**C.    Facts[1]**

Defendant is the Secretary of the Wisconsin Department of Corrections (DOC). Plaintiff is a state prisoner who is currently incarcerated at Redgranite Correctional Institution (RGCI).

RGCI maintains an ongoing drug testing program that includes random testing of no less than 5% (approximately 46 to 47 inmates) of the inmate population based on a computer-generated selection process. RGCI uses urinalysis for its random drug testing. When an inmate is selected for random testing, a staff member pat searches the inmate and then escorts him to the restroom or cell to utilize the toilet. The staff member collecting the

---

[1] The facts are taken from Defendant's Proposed Finding of Fact and the supporting affidavits and exhibits. Plaintiff has not filed a response to defendant's proposed findings of fact, and his response to defendant's motion for summary judgment is not sworn. However, plaintiff's complaint is sworn, and I will construe it as an affidavit at the summary judgment stage. Ford v. Wilson, 90 F.3d 245, 246 (7th Cir. 1996).

3

sample must accompany the inmate and observe the sample being taken to make sure it is provided directly from the inmate and is not altered in any way.

If an inmate refuses to provide a urine sample or is unable to provide at least 30 milliliters, he is informed that his refusal constitutes a violation of Wis. Admin. Code § DOC 309.59 and that he will be subject to disciplinary action for the use of intoxicants. If an inmate is unable to provide a sample immediately, he is informed that he has two hours to provide a sample. Staff will strip search and seat the inmate in an interview room where he can be observed at all times. The inmate is given no more than eight ounces of water per hour upon request during the two-hour period. If, after two hours have elapsed, the inmate still will not produce a sample, the inmate is then considered to have refused and he is issued a conduct report, which may result in the same penalty as if he tested positive.[2]

On January 18, 2005, plaintiff wrote a letter to the RGCI psychiatrist and said he had "a very embarrassing problem" and requested psychiatric assistance for his problem. (DPFOF ¶¶ 43, 44; Marcellino Aff., Ex. 1002, pp. 45-47.) Plaintiff explained that he had "a very serious problem giving UA [urinalysis] samples" and that he had this problem even before he came to prison. (DPFOF ¶ 43.) In his letter, plaintiff requested an alternate test, such as blood or hair samples, and even offered to pay for the alternate testing. Plaintiff wrote that he could provide "no logical reason" why he had this problem. (DPFOF ¶ 44.) He explained that he would be in prison for a few more years and he did not want to end up

---

[2] For example, on January 8, 2005, plaintiff was unable to timely provide a urinalysis sample. As a result, he was issued a conduct report and sentenced to disciplinary separation. Plaintiff appealed, and the warden reduced his disciplinary separation from 60 days to 30 days; he was released to the general population on January 27, 2005. This conduct report was later removed from plaintiff's record on the recommendation of the Psychological Services Unit.

4

in segregation in the future because he could not provide a urine sample within the two hour time limit.

On February 9, 2005, plaintiff met with Dr. Marcellino, a psychologist at RGCI. Plaintiff described the feeling he gets when having to urinate in the presence of others as "anxiety, it's like doing a test you haven't studied for." (DPFOF ¶ 48.) Dr. Marcellino diagnosed plaintiff as suffering from paruesis, a form of social anxiety disorder that is defined as difficulty or inability to urinate due to anxiety associated with factors such as time pressure, being observed, others being close by, or when traveling on a moving vehicle.[3] (DPFOF ¶ 49). Plaintiff averred in his complaint that his medical condition causes him "physical and mental pain during these urinalysis tests." (Compl. at 6.) Dr. Marcellino developed a treatment plan for plaintiff that included a recommendation that plaintiff implement visualization and systematic desensitization approaches to alleviate his paruesis. Dr. Marcellino met with plaintiff again on March 3, 2005, and he recommended that plaintiff check out and read a self-help book on paruesis that had recently been ordered for the RGCI library.[4]

During the summer of 2005, RGCI developed an alternate urinalysis procedure with input from security personnel and psychological services to accommodate selected inmates who have been diagnosed with a mental condition that is relevant to this accommodation. Under the alternate urinalysis procedure, the inmate will be given two hours to produce a

---

[3] Paruesis is defined as "inhibited urination, especially in the presence of others." Stedman's Medical Dictionary 1329 (27th ed. 2000).

[4] On September 22, 2005, Dr. Marcellino checked with the RGCI librarian and learned that plaintiff had not yet checked out the recommended book. (DPFOF ¶ 59.)

5

urine sample and will be offered fluids consistent with the present policy. An officer will accompany the inmate to the bathroom where the inmate is strip searched. However, the inmate is permitted to use the bathroom stall, with the door closed, in order to produce a urine sample. The officer will stand outside the stall while the inmate produces the urine sample, and the officer will not engage in unnecessary conversation so as to maximize the inmate's subjective impression that he is not being observed. If the inmate is unable to produce a urine sample with these accommodations, RGCI's present policy will prevail. The Psychological Services Unit (PSU) provides the names of inmates who require accommodation to the security director, and the security director ensures that the appropriate staff is told of these accommodations and the appropriate action to follow.

On September 14, 2005, plaintiff wrote to Dr. Marcellino indicating that he had received a letter informing him that RGCI had a new testing policy for inmates diagnosed with paruesis. (DPFOF ¶ 57; Marcellino Aff., Ex. 1002, pp. 32-34.) Plaintiff stated that his understanding of the letter was that inmates are still required to provide a UA sample with "an officer standing right in back of us." (DPFOF ¶ 57.) Plaintiff questioned "why anyone in your department would authorize this, knowing someone has a condition that PREVENTS him from providing a UA sample with someone watching??" (DPFOF ¶ 57.) Plaintiff also questioned why the PSU would not tell security to provide alternate tests for those inmates with paruesis. Plaintiff stated, "I just can't do these tests at all." (DPFOF ¶ 57.)

On October 17, 2005, plaintiff wrote to PSU supervisor Barbara Seldin. (DPFOF ¶¶ 24, 60.) Plaintiff's letter stated, in part:

> On September 9, 2005, I received a letter ... informing me that RGCI now has implemented a new urinalysis testing procedure for those of us with SAD-P.

6

> ...
>
> As I asked Dr. Marcellino, please REMOVE my name from this "list", and please let me know, in writing, that my name is off the list. I do not wish to be part of this new RGCI urinalysis testing procedure.
>
> This new procedure is more like punishment for having SAD-P.
>
> In my opinion, it will only INCREASE the psychological symptoms of SAD-P, and in addition, cause those of us here with this condition, embarrassment and ridicule from staff and other inmates. This, alone with strip searches, is not what I call treatment, or help, for this condition I have.

(Marcellino Aff, Ex. 1002, p. 30 (emphasis in original).) Seldin wrote to plaintiff on October 18, 2005. She stated that he had received plaintiff's October 17, 2005 letter requesting that his name be removed from the list of inmates who require special accommodations for random urinalysis as directed by the PSU. (DPFOF ¶ 61.) Seldin assured plaintiff that no specific diagnostic information had been communicated about inmates on the special accommodations list, but she advised plaintiff that she would remove his name from the list. (DPFOF ¶ 61.) Seldin also encouraged plaintiff to work with Dr. Marcellino because paruesis is "eminently treatable." (Marcellino Aff., Ex. 1002, p. 29.)

On October 20, 2005, plaintiff again wrote to Seldin. Plaintiff's letter stated, in part:

> I asked the Warden and you and your staff for help regarding this problem I have (to authorize an alternate form of drug testing for me such as blood, hair or saliva tests) (these tests WOULD alleviate the psychological symptoms of SAD-P), I even offered to pay for these alternate tests myself.
>
> Your "treatment" for me consisted of a two line statement from Dr. Marcellino stating "Mr. Chapman should implement the visualization and systematic desensitization approaches to alleviating his Paruesis." The second step of your "treatment" for me was the new RGCI urinalysis testing procedure which,

7

> without going through its specifics, only INCREASES the psychological symptoms of my condition.
>
> You diagnosed me with a legitimate medical condition called SAD-P, which prevents me from completing these urinalysis tests, AND causes both physical and mental discomfort when taking these urinalysis tests, YET you STILL force me to take these same urinalysis tests that CAUSE the symptoms of the condition YOU diagnosed me with ????  What kind of sense does that make?

(Marcellino Aff., Ex. 1002, p. 27)(emphasis in original). Plaintiff's letter later argues: "Your letter makes it look like I'm refusing treatment. You've offered me NO treatment; PSU's actions towards me are like punishment for having this condition." (Marcellino Aff., Ex. 1002, p. 28.)

On November 1, 2005, Seldin responded to plaintiff's October 20 letter. She wrote:

> Your 10/20/05 letter to me indicates that you do not have a complete and accurate understanding of the treatment options available to you.
>
> On 2/9/05 Dr. Marcellino reviewed with you certain visualization and systematic desensitization approaches to alleviating your condition. He recommended that you practice these procedures in addition to reading a self-help book entitled, "The Shy Bladder Syndrome: Your Step-by-Step Guide to Overcoming Paruesis." He indicated that you should submit an Interview Request to follow up with him after you followed these recommendations.
>
> Dr. Marcellino saw you again for an interview on 3/3/05. He again encouraged you to read "The Shy Bladder Syndrome" and told you that the library had obtained a copy of the book. You indicated to him that you found some relief in knowing that others suffer from this disorder, that it has a name, and that it can be treated.
>
> On 9/23/05 Dr. Marcellino followed up with the librarian and was informed that you had not checked out the recommended book as of that date. Also you have not requested any further help from Dr. Marcellino.

8

> Contrary to your assertion that you have not received treatment for your condition, it is rather easy to see that in fact treatment opportunities have been provided to you. You have not followed up on any of the recommendations. You need to make a more serious effort to follow the recommended treatment as it is the best option available to you at this time.
>
> The special accommodations which were offered are still available to you should you change your mind.

(DPFOF ¶ 63; Marcellino Aff., Ex. 1002, p. 26.)

Plaintiff met with Dr. Marcellino on November 29, 2005 and informed Dr. Marcellino that he did not want to be on clinical monitoring. Dr. Marcellino recommended a change in plaintiff's classification to MH-0 based on plaintiff's request and his refusal of offered services. Dr. Marcellino told plaintiff he still has access to PSU services even if he is not on clinical monitoring. He also showed plaintiff the Paruesis self-help book, reminded plaintiff it is in the RGCI library, and advised plaintiff that he is welcome to contact PSU for assistance in addressing his paruesis.

Plaintiff is not currently identified on RGCI security's "selected inmates" list by the PSU as an inmate diagnosed with a mental condition that would require the alternate random urinalysis procedure that is used to accommodate selected inmates. Since December 2005, plaintiff has been randomly drug tested seven times; he has provided a urine sample each time.

**D.     Analysis**

Defendant argues that RGCI has not been deliberately indifferent to plaintiff's needs, either in its treatment of plaintiff's paruesis or its development of the alternate urinalysis procedure. Rather, defendant contends that plaintiff has rejected every accommodation attempt because plaintiff wants a different type of accommodation, one that does not involve

9

the provision of a urine sample. Defendant asserts that just as "a mere disagreement with the course of the inmate's medical treatment does not constitute an Eighth Amendment claim of deliberate indifference," Snipes v. DeTella, 95 F.3d 586, 591 (7th Cir. 1996), nor does a mere disagreement with the reasonable accommodation made in RGCI's drug testing policy constitute an Eighth Amendment claim of deliberate indifference.

Deliberate indifference to serious medical needs of prisoners violates the Eighth Amendment, which applies to the states through the Fourteenth Amendment. Lee v. Young, 533 F.3d 505, 509 (7th Cir. 2008) (citation omitted). The Eighth Amendment prohibits punishments that are incompatible with "evolving standards of decency that mark the progress of a maturing society." Id. (quoting Trop v. Dulles, 356 U.S. 86, 101 (1958)). In order to prevail on a deliberate indifference claim, plaintiff must show (1) that his condition was "objectively, sufficiently serious" and (2) that the "prison officials acted with a sufficiently culpable state of mind." Lee, 533 F.3d at 509 (quoting Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005)). A medical condition is serious if it "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." Greeno, 414 F.3d at 653. "With respect to the culpable state of mind, negligence or even gross negligence is not enough; the conduct must be reckless in the criminal sense." Lee, 533 F.3d at 509.

In this case, it is undisputed that plaintiff has been diagnosed with a serious medical condition, paruesis. Therefore, this case boils down to a determination of whether "prison officials acted with a sufficiently culpable state of mind" that constitutes deliberate indifference. See id. (quoting Greeno, 414 F.3d at 652).

Plaintiff concedes that the DOC has responded to his concerns by implementing a modified urinalysis testing procedure. However, he asserts that the modified test is still a urinalysis testing procedure and he "just can't do these tests at all." (Marcellino Aff., Ex. 1002, p. 33.) Plaintiff repeatedly argues that there are alternate forms of drug testing available, including tests of the blood, hair, sweat and saliva. He is not challenging the DOC's "right to drug test him," nor is he refusing to be drug tested; he is "simply requesting an alternate form of drug test due to his medical condition." (Compl. at 6.)

Defendant's reliance on Snipes is appropriate because plaintiff wants to choose the type of drug test to which he is subjected and disagrees with the accommodations provided to him. See 95 F.3d at 591. In effect, the accommodation offered to plaintiff during RGCI's random drug testing is part of the treatment for plaintiff's medical condition. Although RGCI's alternate test procedure still requires a urine sample, neither the RGCI policy, nor its implementation, are deliberately indifferent to the needs of inmates with paruesis. In fact, the alternate test was developed with PSU staff with paruesis in mind. Even if plaintiff would prefer a form of testing that did not include urinalysis, it does not follow that any urinalysis test constitutes deliberate indifference to his paruesis.

The PSU staff also gave plaintiff a number of treatment options to help him alleviate or overcome his medical condition, including visualization and desensitization techniques, counseling and access to a self-help book about paruesis. The record is replete with efforts to treat plaintiff's paruesis and correspondence between plaintiff and PSU staff. Plaintiff repeatedly argues his conclusion that it is deliberate indifference to subject a person with paruesis to any urinalysis test, but he has submitted no admissible evidence showing defendant's deliberate indifference. In a letter to the PSU, plaintiff argued: "Your letter

11

makes it look like I'm refusing treatment. You've offered me NO treatment; PSU's actions towards me are like punishment for having this condition." (Marcellino Aff., Ex. 1002, p. 28). That is only argument, though, not evidence, and it simply reflects plaintiff's disagreement with the treatment and accommodation RGCI provided. In contrast, defendant has shown that RGCI staff responded promptly to plaintiff's initial inquiry about his problem, provided him with ongoing treatment, even when plaintiff refused to follow treatment recommendations, and went so far as to create an alternate urinalysis testing procedure to accommodate inmates with paruesis. This is not deliberate indifference, "but a deliberate decision by a doctor to treat a medical need in a particular manner." Snipes, 95 F.3d at 591.

## II. PLAINTIFF'S REQUEST

Plaintiff filed a request asking that his medical records be kept confidential. Before sealing any part of the record of a case, I must make a determination of good cause. See Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co., 178 F.3d 943, 944 (7th Cir. 1999). Although defendant has not opposed plaintiff's request, it is improper to delegate the decision to seal portions of a record to the parties by giving them a virtual carte blanche to seal whatever portions of the record they want to seal. See id. "The parties to a lawsuit are not the only people who have a legitimate interest in the record compiled in a legal proceeding." Id.

Plaintiff's certified medical and mental health records were filed on August 7, 2008, as Exhibit 1002, Part 1 and Exhibit 1002, Part 2 to Docket #80, the Affidavit of Robert L. Marcellino, Psy.D. As such, the plaintiff's medical records have been available through CM/ECF and PACER since that time. I note that plaintiff has put his health at issue in this litigation and thereby waived physician-patient privilege. Wis. Stat. § 905.04(4)(c).

12

However, I recognize plaintiff's concerns regarding the availability of his sensitive medical and mental health information in a public forum. I conclude that there is good cause to place plaintiff's certified medical records under seal, but the good cause does not extend to those portions of the records so relevant to plaintiff's claim that they have been cited or quoted by the parties or the court in other documents.

Therefore, I will fashion a hybrid remedy. To the extent that information from the medical records is incorporated into other documents filed by the parties or orders issued by this court, that information will remain visible to the public. I will place the source documents themselves under seal, though. I will order the Clerk of Court to make the exhibits to docket #80 unavailable on-line. The Clerk of Court shall take the paper copies of these documents in the court's file and seal them in an envelope conspicuously marked "SEALED" and treat them as confidential. See General L.R. 79.4(b) (E.D.Wis.).

### III.  CONCLUSION

**For the foregoing reasons,**

**IT IS THEREFORE ORDERED** that defendant's motion for summary judgment (Docket #77) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's motion opposing defendant's motion for summary judgment (Docket #85) is **TERMINATED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly.

**IT IS ALSO ORDERED** that plaintiff's request for medical records to be kept confidential (Docket #84) is **GRANTED** as discussed above.

**IT IS FURTHER ORDERED** that the Clerk of Court shall make the exhibits to docket #80 unavailable on-line.  The Clerk of Court also shall take the paper copies of these documents in the court's file and seal them in an envelope conspicuously marked "SEALED" and treat them as confidential.

Dated at Milwaukee, Wisconsin, this 20 day of February, 2009.

/s_____
LYNN ADELMAN
District Judge